[S. F. No. 12160. In Bank.—February 23, 1927.]

## ANTHONY A. DWYER, Petitioner, v. CITY COUNCIL OF THE CITY OF BERKELEY et al., Respondents.

[1] Municipal Corporations—Zoning Ordinance—Berkeley Charter — Initiative and Referendum — Construction. — An ordinance amending a zoning ordinance of the City of Berkeley is within the initiative and referendum provisions of the charter of that city.

[2] Id.—Constitutionality of Charter.—Initiative and referendum provisions of a freeholder's charter adopted by a city in pursuance of the provisions of article XI, section 8, of the state constitution, are valid and constitutional.

[3] Id.—Exercise of Legislative Prerogative — Ordinances. — Only ordinances of a municipality which involve an exercise of a legislative prerogative are subject to the initiative and referendum.

[4] Id.—Zoning Ordinances—Police Power.—Zoning ordinances are police power enactments designed for the promotion and perpetuation of the moral and material welfare of the people.

[5] Id.—Police Regulation—Constitutional Law.—The power to enact police regulations is conferred upon cities by section 11 of article XI of the constitution; and municipalities are expressly authorized to establish districts or zones within which the use of property may be regulated by an act of the legislature passed in 1917 (Stats. 1917, p. 1419).

[6] Id.—Berkeley Charter—Initiative and Referendum—Construction.—Not only have the citizens of Berkeley in their charter failed to expressly exclude zoning ordinances from the operation of the initiative and referendum, but they have phrased the sections pertaining to these powers in such broad, general, and unambiguous language, as to impel the conclusion that it was intended that legislation on every municipal subject should, unless expressly or by clear and necessary implication excluded, be subject to a reference to the people for approval or rejection.

[7] Id.—Zoning Ordinance—Referendum—Exclusion by Implication.—A zoning ordinance passed as an amendment to the general and comprehensive zoning law of the City of Berkeley is not excluded from the referendum provision of the charter of that city by necessary implication.

3. See 18 Cal. Jur. 946.

4. Validity of zoning ordinances, notes, 43 A. L. R. 668; 38 A. L. R. 1496; 33 A. L. R. 287; 19 A. L. R. 1395.

5. See 18 Cal. Jur. 858.

[8] Id. — Local Ordinance — General Vote on. — If it be conceded that a zoning ordinance is local in character and directly affects only a small proportion of the population of the city, there is nothing theoretically inconsistent in permitting the electorate of the entire city to pass upon it by a referendum election or to enact it by initiative proceedings.

[9] Id. — Nature of Initiative and Referendum Laws. — By the enactment of initiative and referendum laws the people simply withdraw from the legislative body and reserve to themselves the right to exercise a part of their inherent legislative power.

[10] Id. — Application of Referendum Provisions. — Since the legislative body of a city exercises powers derived from the people, and the city council, the legislative body of the city, representing the electorate of the entire city, has authority to pass a zoning ordinance, no violence is done to principles of statutory construction in holding that the local character of the ordinance, if it be such, is not of itself sufficient to preclude an application of the referendum.

[11] Id. — General Zoning Scheme — Interest of Entire Municipality. — In view of the substantial interest which the electors of an entire municipality have in its zoning scheme, it cannot be held that because residents of a particular locality rezoned may be more immediately and apparently affected than are residents of other portions of the city, the broad initiative and referendum provisions of a city charter and the constitution do not apply to an amendment to the general zoning law which reclassifies a portion of the city's territory.

[12] Id. — Amendment to Zoning Law — Right of Protest — Application of Initiative and Referendum. — Although an application of the initiative and referendum provisions of the charter of Berkeley to an ordinance amending the general zoning ordinance of that city may deprive the residents of a reclassified district and of the area of protest of rights accorded them by the zoning law, when an amendment to the zoning law is passed by the city council, the proponents and opponents are given all the privileges and rights to express themselves in an open election that a democracy or republican form of government can afford to its citizens, and the constitutional right reserved by the people to submit legislative questions to a direct vote cannot be abridged by a procedural requirement of a superseded municipal ordinance dealing with the same subject of legislation.

[13] Id. — Reclassification — Passage of Ordinance — Procedure. — An ordinance of the City of Berkeley providing that under ordinary conditions a majority vote of the council is sufficient to effect a reclassification under the zoning ordinance, but which further provides that in the event of protest filed representing twenty per cent or more of the area of the property included in the

proposed reclassification, or twenty per cent or more of the front-
age of property other than that proposed to be reclassified but
within the area of protest, a reclassification may only be effected
by a two-thirds vote of the council, affects only legislation by
ordinance and has no influence upon direct legislation.

(1) 43 C. J., p. 584, n. 82.   (2) 43 C. J., p. 584, n. 82.   (3) 43
C. J., p. 585, n. 11.   (4) 43 C. J., p. 334, n. 39.   (5) 43 C. J.,
p. 333, n. 31.   (6) 43 C. J., p. 585, n. 11.   (7) 43 C. J., p. 585, n. 11.
(8) 43 C. J., p. 587, n. 46 New.   (9) 43 C. J., p. 584, n. 73.   (10) 43
C. J., p. 345, n. 96, p. 587, n. 46 New.   (11) 43 C. J., p. 585, n. 17
New.   (12) 43 C. J., p. 587, n. 46 New, p. 588, n. 61 New.   (13) 12
C. J., p. 887, n. 38, p. 890, n. 53 New; 43 C. J., p. 584, n. 84 New,
p. 588, n. 65 New.

APPLICATION for a Writ of Mandate to compel the
City Council of Berkeley to repeal or submit to referendum
an ordinance amending the zoning ordinance of that city by
reclassifying property.   Writ granted.

The facts are stated in the opinion of the court.

J. E. Pemberton and Albert M. Hardie for Petitioner.

Earl J. Sinclair, City Attorney, and Calkins, Hagar, Hall
& Linforth for Respondents.

SEAWELL, J.—Petition for writ of mandate to compel
the City Council of the City of Berkeley to either repeal or
submit to a referendum vote of the people an ordinance
passed by said City Council reclassifying as a business and
public use district of class IV certain property designated
in the comprehensive zoning ordinance of said city as a resi-
dence district of class I, wherein only dwellings, flats, clubs,
churches, railroad shelter stations, apartment houses without
stores, and hotels without stores are permitted.   It appears
from a stipulation as to facts entered into by the parties,
and from the petition for the writ and return to the alter-
native writ, that petitioner is a resident, taxpayer, and elector
of the City of Berkeley who owns and resides upon property
in the vicinity of the property described in the ordinance of
reclassification, and who is also one of the signers of the
petition by which the referendum is sought to be invoked.
The City Council of Berkeley, the mayor, the respective
members of said Council, and the city clerk are named as

respondents. The area reclassified comprises approximately a one five hundred and fiftieth (1/550) part of the city and is owned by the University of California, which, it is alleged, desires and intends to conduct a poultry farm and experiment station on said land, which project contemplates the raising of chickens on a large scale in connection with its courses in poultry husbandry. The intention of raising chickens on a large scale on said lands is denied, but it is admitted that it is the purpose of said university to use a portion of said land as "an experiment station in connection with instruction in poultry husbandry." It is alleged in the return to the alternative writ that the property is bounded on the west by a district classified in the general zoning law as an industrial district of class VI, in which factories not obnoxious, warehouses, including any business use, stables, feed and fuel yards, aviation fields and residences of any kind included in class I are permitted; on the north by a district of class IV, in which schools, public and semi-public buildings, playgrounds, green-houses, nurseries, and residences of any kind included in class I may locate, and on the east and south by a district classified as a residence district of class I.

The general comprehensive zoning ordinance of the City of Berkeley was adopted by the City Council on June 1, 1920, and is designated Ordinance No. 666, N. S. Ordinance No. 1190, N. S., which is under consideration in the instant case, was passed by said City Council on May 25, 1926, as an amendment to the general zoning ordinance, after proceedings for amendment had been duly and regularly taken in accordance with the provisions of Ordinance No. 1130, N. S., which is also an amendment to Ordinance No. 666, N. S., and provides the procedure to be followed in reclassifying property pursuant to Ordinance No. 666, N. S. Within thirty days after the passage of said Ordinance No. 1190, N. S., Albert M. Hardie, one of the attorneys for petitioner, pursuant to the referendum provisions of the Berkeley charter, appeared at the office of the city clerk for the purpose of filing a referendum petition and requested said city clerk to compare, examine, and verify the signatures and certify to the sufficiency of the petition. The city clerk refused to accept, receive, or file the same. There-

after said Hardie appeared before the Council in regular session assembled as the representative of petitioner and others. A resolution was passed at said meeting wherein it was recited that the Council refused to accept the petition for the reason that it had been advised by its legal adviser, the city attorney, that said Ordinance No. 1190, N. S., was not a proper subject for referendum. The point that the petition was not duly presented will be considered hereafter.

[1] It is the contention of respondents that an ordinance such as No. 1190, N. S., which amended the general zoning law, is neither within the initiative and referendum provisions of the state constitution, nor the statutes of the state, nor the provisions of the charter of the City of Berkeley.

The City of Berkeley operates under a freeholder's charter which went into effect July 1, 1909 (Stats. 1909, p. 1208), and was adopted in pursuance of the provisions of article XI, section 8, of the state constitution. The provisions of said charter relating to the initiative and referendum are articles XIII and XIV. Section 92 (art. XIII) pertaining to the initiative power is as follows:

"Direct legislation.

"Sec. 92. (1) *Any* proposed ordinance may be submitted to the Council by a petition signed by registered electors of the City equal in number to the percentage hereinafter required." (Italics supplied.)

The subsequent sections provide that if the petition accompanying the proposed ordinance is signed by electors equal in number to fifteen per centum of the entire vote cast for all candidates for mayor at the last preceding general municipal election at which a mayor was elected, the Council shall pass the ordinance without alteration within twenty days after the attachment of the clerk's certificate of sufficiency to the petition, or call a special initiative election within twenty-five days. If electors equal in number to at least five per centum, but less than fifteen per centum, have signed the petition the ordinance is to be passed by the Council or submitted to a vote of the people at the next general election, rather than at a special election. The referendum provision (art. XIV, sec. 93), as amended in 1923 (Stats. 1923, p. 1548), is as follows:

"Mode of protesting against ordinances.

"Sec. 93. *No* ordinance passed by the Council shall go into effect before thirty days from the time of its final passage, *except when otherwise required by the general laws of the State or by the provisions of this Charter respecting street improvements, and except the ordinance making the annual tax levy, and except an ordinance for the immediate preservation of the public peace, health or safety, which contains a statement of its urgency, and is passed by a seven-ninths vote of the Council.* . . . If during said thirty days a petition signed by qualified electors of the City equal in number to at least ten per centum of the entire vote cast for all candidates for Mayor at the last preceding general municipal election at which a Mayor was elected, protesting against the passage of such ordinance, be presented to the Council, the same shall thereupon be suspended from going into operation and it shall be the duty of the Council to reconsider such ordinance, and if the same be not entirely repealed, the Council shall submit the ordinance, as is provided in Article XIII of this Charter, to the vote of the electors of the City, either at the next general municipal election or at a special election to be called for that purpose, and such ordinance shall not go into effect or become operative unless a majority of the qualified electors voting on the same shall vote in favor thereof. . . . " (Italics supplied.)

It is to be observed that these provisions were embodied in the city charter of Berkeley before the electors of the state had, by constitutional amendment (art. IV, sec. 1), reserved to themselves "the power to propose laws and amendments to the Constitution, and to adopt or reject the same, at the polls independent of the legislature," and also "the power, at their option, to so adopt or reject any act, or section or part of any act, passed by the legislature," and prior to the day they provided for the reservation of the initiative and referendum to the electors of each county, city and county, city and town of the state by the following provision:

"The initiative and referendum powers of the people are hereby further reserved to the electors of each county, city and county, city and town of the state, to be exercised under such procedure as may be provided by law. . . . Nothing

contained in this section shall be construed as affecting or limiting the present or future powers of cities or cities and counties having charters adopted under the provisions of section eight of article XI of this Constitution. In the submission to the electors of any measure under this section, all officers shall be guided by the general laws of this state, except as is herein otherwise provided. This section is self-executing, but legislation may be enacted to facilitate its operation, but in no way limiting or restricting either the provisions of this section or the powers herein reserved." (Art. IV, sec. 1, amendment adopted October 10, 1911.)

Pursuant to said amendment the legislature enacted measures providing for direct legislation in cities other than those having a freeholder's charter containing provisions for direct legislation. (Stats. Ex. Sess. 1911, p. 131; amended Stats. 1915, p. 319; amended Stats. 1917, p. 655.) These measures prescribe a procedure similar to that outlined by the City of Berkeley charter.

[2] The constitutionality and validity of charter provisions resembling those contained in the Berkeley charter were upheld in the case of *In re Pfahler*, 150 Cal. 71 [11 Ann. Cas. 911, 11 L. R. A. (N. S.) 1092, 88 Pac. 270], in which amendments to the Los Angeles city charter providing for the initiative and referendum were under review. In earlier cases passing upon the application of the initiative and referendum to other types of municipal legislation it has been said that if the right of referendum can be invoked, the corollary right to initiate legislation must be conceded to exist. (*Chase* v. *Kalber*, 28 Cal. App. 561 [153 Pac. 397]; *Starbuck* v. *City of Fullerton*, 34 Cal. App. 683 [168 Pac. 583].)

[3] It is plain that only ordinances of a municipality which involve an exercise of the legislative prerogative are subject to the initiative and referendum. (*Hopping* v. *Council of the City of Richmond*, 170 Cal. 605 [150 Pac. 977].) [4] Zoning ordinances are police power enactments designed for the promotion and perpetuation of the moral and material welfare of the people. (*Miller* v. *Board of Public Works*, 195 Cal. 477 [38 A. L. R. 1479, 234 Pac. 381], and cases therein cited.) [5] The power to enact police regulations is conferred upon cities by section 11 of

article XI of the constitution, and municipalities are expressly authorized to establish districts or zones within which the use of property may be regulated by an act of the legislature passed in 1917. (Stats. 1917, p. 1419.)

[6] Not only have the citizens of Berkeley in their charter failed to expressly exclude from the operation of the initiative and referendum ordinances of the kind in question, but they have phrased the sections pertaining to these powers in such broad, general, and unambiguous language as to impel the conclusion that it was intended that legislation on every municipal subject should, unless expressly or by clear and necessary implication excluded, be subject to a reference to the people for approval or rejection. In the charter provisions concerning the initiative the people reserved to themselves the right to enact *any* proposed ordinance by initiative proceedings (art. XIII, sec. 92), while the corresponding sections authorizing the use of the referendum as a mode of protest against legislative action provide that *no* ordinance, with certain exceptions expressly excluded and not applying in the instant case, shall go into effect for thirty days after its passage, and that during such time referendum proceedings may be instituted. (Art. XIV, sec. 93.)

[7] Respondents contend that although a zoning ordinance passed as an amendment to a general and comprehensive zoning law is not expressly excluded from the referendum provisions of the charter, it is by necessary implication so excluded. They argue that such an ordinance is local in nature and directly affects only those within the district rezoned, and, perhaps, in addition, those within the "area of protest," as defined in the zoning ordinance, and, further, that to subject such an ordinance to the referendum would be to render nugatory certain provisions of the zoning law protecting those who own and control property within the district to be reclassified and within the area of protest. From these premises they draw the conclusion that it cannot be presumed that the people intended, in the absence of a clear declaration to that effect, that zoning ordinances of the kind in question should be subject to the referendum. With this argument we cannot agree. To do so would be to disregard the fundamental nature of the initiative and

referendum powers and to ignore the theory underlying the enactment of zoning laws.

[8] If it be conceded that the ordinance in question is local in character and directly affects only a small proportion of the population, there is nothing theoretically inconsistent in permitting the electorate of the entire city to pass upon it by a referendum election or to enact it by initiative proceedings. It is a fundamental tenet of the American system of representative government that the legislative power of a municipality resides in the people thereof, and that the right to exercise it has been conferred by them upon their duly chosen representatives. [9] By the enactment of initiative and referendum laws the people have simply withdrawn from the legislative body and reserved to themselves the right to exercise a part of their inherent legislative power. [10] Since the legislative body exercises power derived from the people, and since the City Council, the legislative body of Berkeley, representing the electorate of the entire city, admittedly had authority to pass the ordinance in question, no violence is done to principles of statutory construction in holding that the local character of the ordinance, if it be of such character, is not of itself sufficient to preclude an application of the referendum. (*Ex parte Ellsworth*, 165 Cal. 677 [133 Pac. 272] ; *Crippen* v. *Farrier*, 166 Cal. 69 [134 Pac. 1139].) There may be reasons or considerations of policy why the people might not wish to reserve for themselves powers of direct legislation in regard to certain ordinances affecting one portion of the city more directly than other portions, but that is not a consideration of sufficient moment to overthrow an important legislative prerogative. It is a characteristic of much legislation, especially in this age of intense specialization of occupations and interests, that it operates, to a greater or less degree, more directly upon one group or section of the population than upon another, and the distinction between zoning legislation and many other types of legislation lies not so much in the fact that a certain proportion of the population which will be less directly affected may be permitted by the operation of the initiative and referendum to establish the rule to be applied to those more vitally and immediately affected, but, rather, that this result becomes more apparent in the

200 Cal.—33

case of zoning legislation reclassifying a district, for the reason that the section of the population most directly affected may more easily be segregated, by virtue of ownership or control of land within a certain geographical area, than in the case of other types of legislation.

If the comprehensive zoning law districting all portions of the city were before us, it could not be successfully contended that the ordinance would not be subject to the referendum, for the reason that residents of the city might be more vitally concerned in and affected by the particular regulations relating to the district in which they owned property or resided than in the restrictions applying to other districts. The vice of respondents' argument consists in placing undue stress upon the sectional interest which residents of a particular district may be expected to have in restrictions more immediately affecting their district and in under-emphasizing the interest of the community as a whole in the existence of a comprehensive zoning plan. It must be presumed that the electorate will act in the interests of the entire city, and of the part to be affected by the proposed legislation. If the law operates more directly upon only a part of the citizens evil intent or design cannot be presumed. It is important to those who own property or reside within a certain district not only that the use to which property may be put in such district be controlled and regulated, but that zoning restrictions embracing the entire city and embodying a well-defined plan be adopted. This proposition is aptly stated in *Zahn* v. *Board of Public Works,* 195 Cal. 497, 513 [234 Pac. 388, 395], in which it is said:

"The power of the city to zone is not limited in our opinion to the protection of established districts. To so hold would be to defeat in a large measure the very purpose of zoning which is to control future development in the best interest of the city. Zoning in its best sense looks not only backward to protect districts already established but forward to aid in the development of new districts according to a comprehensive plan having as its basis *the welfare of the city as a whole.*" (Italics supplied.)

The restrictions relating to any portion of the city are an integral part of an entire scheme and should be the expression of a definite policy. The people in each zone are interested not only in having a comprehensive zoning law, but in what

that law shall be. A zoning ordinance as amended becomes in effect a different ordinance. Even if it be granted that a reclassification of an area as small as that involved in the instant case cannot be said to effect a new scheme, the same rule must necessarily be followed as would be applied if a larger area had been reclassified, and it may be observed that a piecemeal rezoning of small areas may result in a plan differing in vital particulars from that originally contemplated. [11] In view of the substantial interest which the electors of the entire municipality have in its zoning scheme, it cannot be held that because residents of the particular locality rezoned may be more immediately and apparently affected than are residents of other portions of the city, the broad initiative and referendum provisions of the charter and constitution do not apply to an amendment to the general zoning law which reclassifies a portion of the city's territory.

[12] It is next contended that an application of the initiative and referendum provisions to a zoning ordinance such as here involved will deprive the residents of the reclassified district and of the area of protest of rights accorded them by the zoning law. Proceedings for the reclassification of property described in the general zoning law may be commenced by written petition of a citizen, by the city planning commission, or by resolution of the City Council. Before final action may be taken by the Council, two hearings are held, the first before the city planning commission, and the final hearing before the Council. Notices of both hearings are posted within the district affected and the area of protest, and those within such districts may file written protests. The area of protest includes the property which is sought to be reclassified, and all frontages within two hundred feet of any part of the frontage of the property proposed to be reclassified, or within three hundred feet if the property sought to be reclassified consists of two or more blocks of land. At the hearing before the city planning commission, both petitioners and protestants must be given full opportunity to present their views and to be heard. At the hearing before the Council, the written report of the city planning commission, based on the hearing before it and upon its investigations, is read, and each side is allowed fifteen minutes to present arguments. The Council may then

proceed to vote upon the matter in the same manner and with the same effect as in the case of other ordinances except that a two-thirds vote is required in the event that a protest has been filed representing twenty per cent or more of the area of the property included in the proposed reclassification, or twenty per cent or more of the frontage of property other than that proposed to be reclassified, but within the area of protest. (Sec. 12, Ordinance 1130, N. S., City of Berkeley.)

Complaint is made that if the referendum be applied to the proposed amendatory zoning ordinance the persons most directly affected thereby shall have lost the opportunity to present their arguments for and against the proposed measure to the electorate in the manner provided by the ordinance. The answer to this contention is that all persons interested in the measure had to the moment of its adoption an opportunity to appear and oppose or advocate the passage of the proposed ordinance. So far as the adoption of the ordinance was concerned no right was denied them. By the petition for a referendum the matter has been removed from the forum of the Council to the forum of the electorate. The proponents and opponents are given all the privileges and rights to express themselves in an open election that a democracy or republican form of government can afford to its citizens upon any municipal or public affair. The ordinance procedure served its purpose and if there had been no referendum the adoption of the ordinance would have been complete. It is clear that the constitutional right reserved by the people to submit legislative questions to a direct vote cannot be abridged by any procedural requirement of a superseded municipal ordinance dealing with the same subject of legislation.

[13] No weight can be given to respondents' cause by reason of the provisions of section 12, Ordinance No. 1130, N. S., which provide that under ordinary conditions a majority vote of the Council is sufficient to effect a reclassification, but which further provide that in the event of protest filed representing twenty per cent or more of the area of the property included in the proposed reclassification, or twenty per cent or more of the frontage of property other than that proposed to be reclassified but within the area of protest, a reclassification may only be effected by a two-thirds

vote of the Council. Said provisions affect only legislation by ordinance and have not the slightest bearing or influence upon direct legislation.

Doubtless amendments to the zoning ordinance will continue to be made by action of the Council without the intervention of the initiative or referendum, and we do not hold here that the ordinance may not be amended in the manner proposed by the City Council. The policy of giving to the public generally the right to invoke the initiative and referendum in matters of zoning when the effect may be more acutely felt in a given district than by the community at large may be questioned as the wisest exercise of power in such cases. But this is a question of political policy to be determined by the people. We see no dangers sufficiently imminent to warrant this court in holding that it was the intention of the framers of the law to exclude the ordinance in question from the operation of the initiative and referendum.

We have been cited by respondents to three cases upon which they chiefly rely as authorities sustaining their contention. We refer to them in the order in which they were filed: *Hopping* v. *Council of the City of Richmond,* 170 Cal. 605 [150 Pac. 977]; *Chase* v. *Kalber,* 28 Cal. App. 561 [153 Pac. 397]; *Starbuck* v. *City of Fullerton,* 34 Cal. App. 683 [168 Pac. 583]. The opinion in the first case above cited was written by former Justice Shaw. The question before the court in that case was whether a certain resolution adopted by the council of the city of Richmond accepting a proposition of the Harbor Center Land Company offering to donate the sum of four thousand dollars toward the cost of erection of a new city hall on a block of land given by said company to the city of Richmond, on condition that the city appropriate at least an equal amount for the construction of said city hall on said lot, and that when completed it should be occupied and used by the city as such hall, provided the deed was approved by the city attorney, was subject to referendum proceedings. The council held that it was not. The question was tested by the issuance of a writ of mandate. The court held that the resolution was a proper question to be submitted to the voters of the city. In his observations on the power of the referendum, Mr.

Justice Shaw in very guarded language, which is admittedly *dicta,* said:

"There may be grounds for excluding from the operation of these powers legislative acts which are special and local in their nature and in which the entire body of citizens who shall exercise the power of referendum and initiative is not interested, such as resolutions to make local improvements and the like. This question is not before us, for the matters determined by the resolution are not local to any particular part of Richmond but apply generally to, and interest all in the entire city. . . . Inasmuch as the question will doubtless be brought before us in the future, we desire to state here that we express no opinion on the subject and that what we have said must not be understood as having any bearing thereon."

There is nothing of an authoritative character in the case which aids respondents in the instant case.

The other two cases cited are street improvement cases, which were local in character and did not arise in cities governed by freeholders' charters. Street improvement laws must from the nature of the results to be attained operate upon districts or fractional parts of cities, and it was not within the contemplation or intention of the framers of the law that they should be treated as general, comprehensive schemes. In none of the street improvement cases cited was the question of an amendment affecting an ordinance that operated upon all portions of the municipality and had been adopted in its entirety touched upon. In the instant case the zoning law from the first was treated by the Council as a general, comprehensive plan, molded, fashioned, and balanced with reference to the city as a whole. In *Chase* v. *Kalber, supra,* Mr. Justice Hart, in a very learned and analytical discussion, points out the impracticable results that would follow if the street improvement acts were made subject to the operation of the initiative and referendum provisions of the law, and the serious hampering of the orderly administration of the public business that would follow. He arrives at the conclusion that, by reason of the chaos and disorder that would follow, it could not have been the intention of the people to apply the referendum and initiative to a law that was essentially local in character. No such argument can be applied to the situation confront-

ing us.  If the question was a doubtful one we would be required by the rules of statutory construction to resolve the doubt in favor of giving effect to the constitutional prerogative.  It is interesting to here note that the charter provisions of the City of Berkeley (art. XIV, sec. 93) impliedly exempt street improvement ordinances from the operation of the referendum.

There is no merit in the claim that the petition by which the referendum was sought to be invoked was not presented to the clerk and Council in the time and manner provided by law.  We have examined the stipulation of counsel, which sets forth all that was done by the representative of the petitioners in presenting the referendum petition, and are fully satisfied that respondents have no legal grounds upon which to base the claim that the petition was not properly and legally presented and offered for filing.

A peremptory writ of mandate will issue directing the city clerk of the City of Berkeley to indorse the date upon which the petition was presented to her, and to examine the same to ascertain whether it conforms with the requirements of the charter of the City of Berkeley, and, if found to conform to the provisions of said charter in such cases made and provided and particularly to the provisions of article XIV, section 93 and section 94, and the provisions of article III which affect the question, to file the same; and, further, directing the mayor and Council of said city, if said petition shall be found to be legal and sufficient in all respects, to either repeal said Ordinance No. 1190, N. S., or submit the same to the vote of the electors of the City of Berkeley, as in section 93, article XIV, provided, and to perform all other acts that may be meet and proper in the premises.

It is so ordered.

Shenk, J., Waste, C. J., Curtis, J., Preston, J., Langdon, J., and Richards, J., concurred.