256 So.2d 404 (1972)
CITY OF CORAL GABLES, Florida, a Municipal Corporation, and Rebyl Zain, As City Commissioner of the City of Coral Gables, Appellants,
v.
Guy G. CARMICHAEL, Jr., Appellees.
No. 71-761.
District Court of Appeal of Florida, Third District.
January 13, 1972.
*405 Charles H. Spooner, City Atty., and Robert D. Zahner, Asst. City Atty., Adams, George & Wood, Frates, Floyd, Pearson & Stewart and Alan G. Greer and Bertha Claire Lee, Miami, for appellants.
George N. Jahn, Miami, Frank W. Guilford, Jr., Coral Gables, Sibley, Giblin, Levenson *406 & Ward, Miami Beach, for appellees.
Before CHARLES CARROLL and HENDRY, JJ., and LESTER, M. IGNATIUS, Associate Judge.
CARROLL, Judge.
This is an appeal filed by the City of Coral Gables, a defendant below, from a final judgment of the circuit court of Dade County enjoining a referendum.
On March 23, 1971, the City Commission of the City of Coral Gables enacted an ordinance which amended the city's comprehensive zoning ordinance by changing the zoning from single family residence use to multi-family and other more liberal uses on a certain tract of land known as the Cocoplum Beach property.[1]
Thereafter there was invoked the referendum procedure provided for in the charter, to submit the ordinance to a vote of the electors for its approval or rejection. A referendum petition was prepared and timely filed with the city clerk. Thereafter, on April 28, 1971, which was the eighth day of the ten day period within which the city clerk was required to determine and certify as to the sufficiency or insufficiency of the petition, the appellees filed this action in the circuit court and on said date obtained a restraining order, without notice, enjoining the city clerk from performance of her duties in that respect, and on final hearing obtained a permanent injunction blocking the referendum. This appeal by the defendant City of Coral Gables followed, with a joinder in appeal filed by one of the City Commissioners.
Section 21 of the charter of the City of Coral Gables provides:
"The electors shall have the power to approve or reject at the polls any ordinance passed by the Commission or submitted by the Commission to a vote of the electors, except an appropriation ordinance or an ordinance making the annual tax levy, such power being known as the referendum".
The above provision of section 21 of the charter is followed by a number of subsections dealing with the requirements and procedures for the referendum. Subsection (a) thereof specifies a thirty day delay for effectiveness of such a measure (other than an emergency measure). Subsection (b) provides for the filing of a petition for referendum with the city clerk within thirty days after the final passage of an ordinance, and that the petition shall be "signed by the electors of the City equal to a number of at least twenty percent of the total number of registered voters as shown by the City registration books at the last preceding regular municipal election", and that the petition shall specify the ordinance or the part thereof, the repeal of which is sought, but need not contain the text thereof.
Subsection (c) provides that if the petition is found sufficient by the city clerk the latter shall certify that fact to the City Commission at its next regular meeting, and that thereupon the ordinance shall not go into effect until approved by the electors. Further, that upon receipt of a certificate from the city clerk certifying to the sufficiency of the petition the Commission shall consider the ordinance and vote on whether it shall be repealed, and that if the ordinance is not then repealed it shall be submitted to the electors at an election to be held more than thirty days thereafter (or sooner if so provided for by a four-fifths vote of the Commission). It is further provided there that if the ordinance when submitted to the electors is not approved by a majority of those voting thereon, it shall be deemed repealed.
*407 By a further subsection of section 21 of the charter, provision is made for notice of the election to be published fifteen days prior to the election, in a newspaper of general circulation in the city, with the full text of the ordinance set out in such published notice. Subsection (i) deals with requirements as to the signatures on the petition, which may be in separate parts, and the form of affidavit to be appended thereto by the person or persons circulating the same.
Subsection (j) provides that the papers making up the petition shall be assembled and filed with the city clerk, and that within ten days after the petition is so filed "the City Clerk shall determine whether each paper of the petition is properly attested and whether the petition is signed by a sufficient number of electors." Further in subsection (j) the city clerk is directed to declare invalid any petition paper which is not attested by the circulator as required or upon which the affidavit of the circulator can be shown to be false, and that upon completion of the examination of the petition by the city clerk that official "shall attach thereto a certificate showing the result of the examination."
As stated above, after the referendum petition was filed, but before the clerk had made a decision and certificate as to the sufficiency of the petition and during the ten day period allowed therefor, the city clerk was enjoined "from certifying the sufficiency of the referendum petition" until further order of the court. Motions filed by the defendants to dissolve the restraining order and to dismiss the complaint were denied on May 19 by an order in which the cause was set for final hearing on June 4, 1971. Answers were then filed.
The matters alleged in the complaint as constituting grounds for court intervention to prevent the referendum were: (1) that the referendum procedure provided for in the charter could not be invoked with reference to the ordinance, because the zoning code made provision whereby a party aggrieved by the action of the City Commission upon a zoning matter could seek review thereof in the circuit court by petition for certiorari; (2) that because the city, as authorized by § 98.091 Fla. Stat., F.S.A., has adopted for its use the permanent voter registration system of Dade County for registration of electors for future special and general elections, it would not be possible for the city clerk to certify sufficiency of a referendum petition, since the electors of the city are no longer listed in registration books maintained by the city, but are listed on the county registration books; (3) that a referendum as provided for in the charter would constitute a violation of due process of law and a denial of equal protection of the laws; (4) that some of the persons whose names appear on the petition may not be qualified electors of the city; (5) that because the supervisor of registration of Dade County is an appointed official, and not elected and therefore not in position to take the oath required of an elected officer, he is not qualified to determine and certify to the city clerk, at her request or direction, the number of signers of the petition who were registered voters of the city at its last regular election, and the percentage thereof to the total of such registered electors; and (6) that the petition and the various papers comprising it may not be considered to have been timely filed with the city clerk because the clerk did not write or stamp thereon the date of the filing thereof.
By their responsive pleadings the defendants opposed those contentions as constituting ground for enjoining the referendum. Following final hearing the circuit court entered judgment permanently enjoining the charter directed progress of the initiated referendum relating to the said ordinance of March 23, 1971. Other than to recite that "the equities of this cause are found to be with the plaintiffs", no reason or ground for enjoining the referendum was stated in the judgment.
*408 On this appeal therefrom, the appellants contend that no ground or basis in law was shown for the judgment. Appellants point out that the right to such referendum is provided for duly by the charter; that the ordinance involved is legislative in character and is an appropriate subject for referendum under the charter; and argue that the appellees' contention of denial of due process or of equal protection of the laws is without merit, citing James v. Valtierra, 402 U.S. 137, 91 S.Ct. 1331, 28 L.Ed.2d 678; Ranjel v. City of Lansing, 6 Cir.1969, 417 F.2d 321; Dwyer v. City Council of Berkeley, 200 Cal. 505, 253 P. 932. Appellants argue further there was no showing that the procedural requirements of section 21 of the charter relating to the referendum petition had not been or were not being substantially complied with, and that the preliminary and final injunctions were improperly granted in that the city clerk was in the process of performing the duties imposed upon her by the charter to determine the suffiency of the petition and to make report thereon to the City Commission.
The appellees contended the judgment enjoining the referendum was proper, based on the grounds listed above as contained in the complaint, and in addition thereto argue that the ordinance was not legislative but was quasi judicial action, and therefore not subject to referendum.
Upon consideration of the cause in the light of the record, briefs and arguments we are impelled to conclude the granting of the injunction was error, and that the judgment should be reversed.
The action of the City Commission in enacting the ordinance of March 23, 1971, amending its comprehensive zoning ordinance or zoning code, changing the zoning on the property in question, was legislative in character and was subject to referendum as expressly provided for in section 21 of the city charter. Schauer v. City of Miami Beach, Fla. 1959, 112 So.2d 838, discharging certiorari to City of Miami Beach v. Schauer, Fla.App. 1958, 104 So.2d 129; Blankenship v. City of Richmond, 188 Va. 97, 49 S.E.2d 321. In City of Miami Beach v. Schauer, supra, there was presented to this court the question of whether an ordinance of the City of Miami Beach which amended its comprehensive zoning ordinance by changing the zoning on certain property was legislative or was quasi judicial in character, and we there held that such an amendatory zoning ordinance constituted legislative action of the city council. Upon so holding, this court, quoting from the above cited Virginia case, said: "It would be flagrantly inconsistent to hold that the adoption of a comprehensive zoning law is legislative in character and that the amendment to such a law was a quasi-judicial act. If the original act is wholly legislative, an amendment to it partakes of the same character." In Schauer v. City of Miami Beach, supra, the Supreme Court of Florida, after stating agreement with the holding of this court that the amendatory zoning ordinance was the exercise of legislative action by the City of Miami Beach, said: "It is obvious to us that the enactment of the original zoning ordinance was a legislative function and we cannot reason that the amendment of it was of different character."
Moreover, the referendum procedure provided for in the city charter, by which "any ordinance passed by the Commission" (other than for an appropriation or annual tax levy) may be subjected to a referendum vote, with its effectiveness postponed to and dependent upon the outcome thereof, constitutes a method of legislation, relating to enactment of an ordinance, which is cumulative and alternative to the legislative power with respect thereto that is conferred upon the City Commission, when such referendum action is invoked. Barnes v. City of Miami, Fla. 1950, 47 So.2d 3; Scott v. City of Orlando, Fla.App. 1965, 173 So.2d 501; Dwyer v. City Council of Berkeley, supra. It is clear beyond the need to cite supporting authority that *409 in the absence of demonstrated illegality the legislative processes of the state or of a governmental agency of the state which are provided for by law may not be impeded or prevented by the courts.
Submission of an ordinance to voters for its approval or rejection, by a referendum when provided for, does not operate to deprive the opponents or proponents thereof of due process of law or to deny to them the equal protection of the laws. James v. Valtierra, supra, 402 U.S. 137, 91 S.Ct. 1331, 28 L.Ed.2d 678; Dwyer v. City Council of Berkeley, supra, 200 Cal. 505, 253 P. 932. In the latter case, as here, there was involved a charter authorized referendum to submit to a vote of the electors of the City of Berkeley, for their approval or rejection, an ordinance amending the city's comprehensive zoning ordinance. There, when the referendum petition was submitted to the city clerk he refused to accept it and perform his prescribed duties to determine its sufficiency and report thereon. A writ of mandamus was granted commanding the clerk to so proceed as required by the charter, and commanding the city council, if the clerk certified the petition to be sufficient, to either repeal the ordinance or submit it to a vote of the electors. Therein the California Supreme Court said (253 P. at 936 and 937):
"Complaint is made that, if the referendum be applied to the proposed amendatory zoning ordinance, the persons most directly affected thereby shall have lost the opportunity to present their arguments for and against the proposed measure to the electorate in the manner provided by the ordinance. The answer to this contention is that all persons interested in the measure had to the moment of its adoption an opportunity to appear and oppose or advocate the passage of the proposed ordinance. So far as the adoption of the ordinance was concerned, no right was denied them. By the petition for a referendum the matter has been removed from the forum of the council to the forum of the electorate. The proponents and opponents are given all the privileges and rights to express themselves in an open election that a democracy or republican form of government can afford to its citizens upon any municipal or public affair. The ordinance procedure served its purpose, and, if there had been no referendum, the adoption of the ordinance would have been complete. * * *
* * * * * *
"Doubtless amendments to the zoning ordinance will continue to be made by action of the council without the intervention of the initiative or referendum, and we do not hold here that the ordinance may not be amended in the manner proposed by the city council. The policy of giving to the public generally the right to invoke the initiative and referendum in matters of zoning when the effect may be more acutely felt in a given district than by the community at large may be questioned as the wisest exercise of power in such cases. But this is a question of political policy to be determined by the people. We see no dangers sufficiently imminent to warrant this court in holding that it was the intention of the framers of the law to exclude the ordinance in question from the operation of the initiative and referendum."
The fact that the registration records which will reveal whether the petition contains the sufficient number of signatures of qualified electors of the city are in the office of the supervisor of registration of Dade County, rather than maintained in the city offices, does not operate to render ineffective the referendum proceeding authorized by the charter. A permanent single system for registration of electors to qualify them to vote in all elections (with certain exceptions not pertinent here), including the elections held in municipalities, was provided for by § 98.041 Fla. Stat., F.S.A., to be established prior to January 1, 1966, and to become effective in *410 each county thereafter upon adoption by the county commissioners. Such system was established, and has been adopted in Dade County. Section 98.091 Fla. Stat., F.S.A. provides expressly for use of such county registration system by municipalities. The City of Coral Gables has duly adopted such permanent registration system, by enactment of its ordinance No. 1835 for that purpose. In the statutory section last cited it is provided: "In the event any municipality elects to use this system, regardless of the provisions of its charter or other laws relating to electors, any registered elector in the precinct at the time the municipal election is held is qualified to participate in such election." See Armstrong v. City of Edgewater, Fla. 1963, 157 So.2d 422, 426.
In view of the foregoing, we hold to be without merit the contention of the appellees that an examination of the registration records of the City of Coral Gables as shown on the county registration books, by the county supervisor of registration and a determination and report by him to the city clerk as to the number or percentage of qualified voters of the city appearing on the petition could not be used by the city clerk as a basis for her report to the Commission on the sufficiency of the referendum petition as to the presence or absence thereon of the required number of qualified electors. The provisions of section 21 of the charter and of the cited statutory sections relating to registration records of electors of the city against which the referendum petition must be checked are to be read in pari materia. Cf. Hawkins v. City of Birmingham, 248 Ala. 692, 29 So.2d 281.
The section of the charter relating to referendum does not prescribe the manner in which the city clerk should inform herself as to whether the petition contains sufficient number of signers who are qualified electors of the city. For example, section 21 of the charter does not specify that the city clerk must personally examine the registration records, and that such cannot be done by the city clerk through a deputy clerk or other qualified agent. The duty imposed on the city clerk in such circumstance is to ascertain the fact as to the sufficiency or otherwise of the petition in that respect, and in the other required respects, and to certify to the Commission, at its next regular meeting, as to the sufficiency or insufficiency of the petition in those regards.
We agree with the position taken by the appellants that the charter provision for submitting an ordinance to referendum vote is not nullified or affected by the provision in the zoning code that a person who is aggrieved by action taken by the City Commission on a zoning matter may petition for review thereof by certiorari in the circuit court. The latter provision permits court review of the legality of such Commission action, by a limited number of persons. The former, the referendum, represents alternative legislative action on the ordinance by vote of the electors. The objects of those authorized procedures are different, and neither precludes the exercise of the other.
The contention of the appellees that the referendum petition should not be considered to have been timely filed because the petition or its parts were not stamped by the clerk with the time of filing is unsound. The charter provisions relating to the referendum do not require that the time of filing be stamped on the petition. The timeliness of the filing of the petition is shown by the record. Also, we reject as without merit the contention of the appellees that the presence on the petition of the names of some persons who were not registered electors at the time of the last regular election of the city should operate to vitiate the petition. If the referendum petition contains the signatures of the required number of qualified electors as provided for in the charter, the fact that it may also contain names of additional persons not so qualified would be immaterial. Birmingham Gas Co. v. City of Bessemer, 250 Ala. 137, 33 So.2d 475, 478.

*411 "Referendum is the right of the people to have an act passed by the legislative body submitted for their approval or rejection. It is essentially a referral to the voters of a municipality for their direct vote on an existing ordinance, or at least one that has been passed by the municipal legislative body and that is or may become law except for the successful intervention of referendum procedure." McQuillin, Municipal Corporations, Vol. 5, § 16.53.
In Barnes v. City of Miami, supra, Fla. 1950, 47 So.2d 3, 4, the Supreme Court said:
"The power of the initiative may be conferred by the state upon a municipal corporation in respect to any matter, legislative or administrative, within the realm of municipal affairs. Where the power of initiative is given by the legislature it will be generally held to extend to all matters of local concern, unless some matters are expressly or impliedly excluded from its operation by exceptions contained in the charter, the general statutes of the state, or constitutional provisions. See McQuillin, Municipal Corporations, 3rd Ed. pp. 251, 252, Sec. 16.54; * * *"
Although in the above statement in the Barnes case the Court spoke with reference to "initiative", the section of McQuillin on Municipal Corporations which the Supreme Court cited there as authority had applied the proposition pronounced to "referendum" as well as to "initiative", viz: "The power of initiative or referendum may be conferred by the sovereignty upon a municipality with respect to any matter legislative or administrative, within the realm of local affairs; and often the power, as conferred, is extensive, including all ordinances and resolutions and practically all actions that might be taken by a municipal council."
This referendum, involving as it does not only an election process of the City of Coral Gables, but also an exercise of legislative power by the electors, should not be impeded or prevented by a court except where it is made to appear that the proceeding is inapplicable under the law or is in violation of the law. McQuillin, ibid, § 16.68, pp. 249-250. No such showing of illegality of the referendum proceeding having been made in the trial court, the preliminary and permanent injunctions restraining the progress of the referendum were improvidently entered. The judgment is reversed, and the cause is remanded to the circuit court with direction to enter an order dismissing the complaint.
It appearing that the initial injunction order, which restrained the city clerk from performing the charter required duty to determine and make a certificate as to the sufficiency of the referendum petition, was entered the eighth day of the ten day period within which the clerk was required to perform such duty, and that following this reversal of the judgment two days time will remain within which the city clerk should complete the performance of such duty; and it appearing advisable to obviate uncertainty as to when such duty may be performed, it is ordered that the city clerk shall have two days after the date of the filing of our mandate in this cause in the office of the clerk of the circuit court within which to perform such duty, and the clerk of this court is directed to give adequate notice to the attorneys of record for the parties hereto of and on the date upon which our mandate is filed in the office of the clerk of the circuit court. It is further ordered that if, by the filing of a petition for certiorari in the Supreme Court of Florida, or otherwise, a stay or supersedeas of the judgment of this court shall become effective within said two day period after the filing of our mandate, the city clerk shall have an equal period of time within which to perform such duty after the cause is finally determined, as evidenced by the filing of a mandate of the Supreme Court in the office of the clerk of this court, if our judgment shall remain *412 in effect; and likewise, if any further procedure in the referendum should be interrupted by the force of such a stay or supersedeas of our judgment, the referendum may proceed from that point as provided for by the charter after the cause is finally determined, if our judgment shall then remain in effect.
In view of the considerable delay of the referendum which has been occasioned by this court action, the period within which a petition or petitions for rehearing addressed to this opinion and judgment may be filed herein is reduced to five days from the date of the filing hereof.
Judgment reversed, and cause remanded with direction.
NOTES
[1] The background and circumstances relating to the final enactment of the amendatory zoning ordinance of March 23, 1971, are shown in City of Coral Gables v. Sackett, Fla.App. 1971, 253 So.2d 890.