413 So.2d 84 (1982)
CITY OF WINTER SPRINGS, a Municipal Corporation, Appellant,
v.
FLORIDA LAND COMPANY, Appellee.
No. 80-1461.
District Court of Appeal of Florida, Fifth District.
March 31, 1982.
Rehearing Denied April 29, 1982.
Wallace F. Stalnaker, Jr., of Jones, Morrison & Stalnaker, P.A., Altamonte Springs, for appellant.
Ernest R. Drosdick of Lowndes, Drosdick, Doster & Kantor, P.A., Orlando, for appellee.
SHARP, Judge.
Appellant, the City of Winter Springs, seeks reversal of a final summary judgment in favor of appellee, Florida Land Company, so that a referendum election pertaining to zoning may proceed. We reverse the summary judgment.
The summary judgment sets out the following findings of fact:
1. That Florida Land is the fee simple owner of real property which is the subject matter of this cause (hereinafter "Property") situate within the boundaries of the City.
2. That at the time Florida Land became the fee simple owner of the property it had a zoning classification of R-U "Rural Urban Development."
3. That Florida Land subsequently filed an application with the City to rezone the property from the R-U classification to a classification of R-1A, One Story Family Dwelling.

*85 4. That on or about April 22, 1980, the City adopted Ordinance No. 210, which changed the zoning of the property from the R-U classification to R-1A and R-1AA.
5. That subsequent to the adoption of Ordinance No. 210 a citizens committee was formed for the purpose of commencing referendum proceedings under Article X, section 10.01(b) of the City Charter to require the City Council to reconsider Ordinance No. 210, and to require the submission of Ordinance No. 210 to a vote of the electorate of the City should the City Council decline to repeal said ordinance.
6. That the City Clerk determined that the referendum petitions submitted by the citizens' committee contained the requisite number of signatures required under the referendum procedure to cause the reconsideration by the City Council and holding of a referendum election.
7. That as a result of the initiation of the referendum proceeding Ordinance No. 210 has been suspended and Florida Land cannot develop its property in a manner consistent with R-1A and R-1AA zoning classifications.
8. That the City Council has voted not to repeal Ordinance No. 210.
9. That the referendum process of the City as applied to allow the voters of the City to consider whether to repeal a zoning ordinance has the effect of granting to the voters the authority to rezone real property outside of the procedures established for that purpose in the statutes of the State of Florida and the City's Zoning Code.
10. That the County and Municipal Planning for Future Development Act, Chapter 163, Florida Statutes, (1979) [sic] confers upon the City the responsibility and power to adopt comprehensive land use plans and comprehensive zoning ordinances, and additionally delegates the authority to the City to change the zoning classifications on individual parcels of property within the guidelines established in said chapter.
11. That pursuant to authority granted by Chapter 163, the City did adopt a Comprehensive Development Plan in September, 1977.
12. That the City has enacted a Zoning Code, Chapter 44 of the City Code, under authority granted by the Legislature which code sets forth the procedures for rezoning and delineates the responsibility of the City Council to determine whether to rezone individual parcels of real property.
Appellee sought to enjoin the referendum election to prevent a vote on whether Zoning Ordinance Number 210 should be repealed. The trial court found and declared the referendum procedure unconstitutional and invalid because it denied appellee notice and the opportunity to be heard,[1] and because the referendum process constituted an improper delegation of the City's legislative authority by failing to impose adequate guidelines or standards to determine the suitability of a proposed change in a zoning classification.[2] The court enjoined the City of Winter Springs from holding a referendum election on the question of whether to repeal Ordinance Number 210, and it reinstated the Ordinance.
In its Order denying the motion for rehearing the trial court noted that the "decision to find for the plaintiff was and continues to be complicated by a division of authority in this state." The cases upon which the trial court based this conclusion *86 are City of Coral Gables v. Carmichael, 256 So.2d 404 (Fla. 3d DCA 1972) and Andover Development Corporation v. City of New Smyrna Beach, 328 So.2d 231 (Fla. 1st DCA 1976).
In City of Coral Gables the City enacted an ordinance rezoning certain property later involved in the suit. A referendum procedure provided by the City's Charter was invoked to submit the ordinance to a vote of electors for approval or rejection. Ultimately a permanent injunction against the referendum was issued and an appeal followed. The Third District Court of Appeal held that the record showed nothing illegal concerning the referendum proceeding itself, and it reversed the injunctions restraining the progress of the referendum.
In Andover Development Corporation the appellant sought to require a city to issue it a building permit to build a condominium apartment development on a parcel of land. The condominium could have been built under the original zoning when appellant acquired the land, but through the procedure of initiative and referendum the zoning ordinance applicable to the subject property was changed and, at the time of suit, it severely restricted the density of buildings. The district court observed that the rezoning was "in substantial part motivated and directed" at Andover's tract of land. 328 So.2d at 235. The district court held that the City was equitably estopped from denying Andover a building permit, and the record showed in that case that the "initiative and referendum action was arbitrary and capricious." It reversed the decision of the trial court.
We think that the City of Coral Gables controls this case, rather than Andover. Andover is distinguishable from this case because in Andover the appellant had an equitable estoppel defense to the repeal of the original zoning ordinance. There is no such argument available in this case because the appellees owned and acquired their property while it was subject to the earlier zoning.
Andover can be further distinguished from the instant case because Andover involved the challenge of a zoning ordinance, enacted by initiative and referendum, rather than the initiative and referendum process itself. The Andover court held the zoning ordinance was arbitrary and capricious as applied to the appellant's land. This is the classical method of attacking zoning ordinances.[3] Presumably, any zoning ordinance can be challenged under the arbitrary and capricious standard, whether it is established by referendum or by city council, but, the present case does not present (as yet) that issue because the challenged zoning has not yet occurred.
Furthermore, the Andover court disapproved the City of Coral Gables decision stating that City of Coral Gables is based on a California case (Dwyer v. City Council of Berkeley, 200 Cal. 505, 253 P. 932 (1927)), which recent California courts have rejected. The trial court in the instant case also relied on this reasoning in following Andover. However, Andover does not cite any California case which rejects the reasoning of Dwyer; nor has appellee cited for our benefit any such case. To the contrary, the California Supreme Court cited Dwyer with approval in Associated Home Builders v. City of Livermore, 135 Cal. Rptr. 41, 557 P.2d 473 (Ct.App. 1976). Andover also relied on an Ohio Supreme Court opinion, Forest City Enterprises, Inc. v. City of East Lake, 41 Ohio St.2d 187, 324 N.E.2d 740 (1975), which was later reversed in City of East Lake v. Forest City Enterprises, Inc., 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976). The rationale of the United States Supreme Court supports our decision in the instant case.
The issue in City of East Lake was whether a city charter provision requiring proposed land use changes to be ratified by a fifty-five percent vote of the electorate would violate the due process rights of a landowner who applies for a zoning change. The Supreme Court held that a referendum cannot be characterized as a delegation of power. It reasoned that all power derives *87 from the people, and they can delegate it to the representative instruments they create. "In establishing legislative bodies, the people can reserve to themselves power to deal directly with matters which might otherwise be assigned to the Legislature." 426 U.S. at 672, 96 S.Ct. at 2361. The Court noted that the Ohio Constitution specifically reserves the referendum power in Article II, Section 1f.[4] 426 U.S. at 673, 96 S.Ct. at 2362.
The Court held that the constitutional doctrine, that a delegation of power to a regulatory entity must be accompanied by discernible standards so the delegatee's actions can be measured for their fidelity to the legislative will, is not applicable to a reservation of power by the people to themselves.
A referendum ... is the city itself legislating through its voters  an exercise by the voters of their traditional right through direct legislation to override the views of their elected representatives as to what serves the public interest... . As a basic instrument of democratic government, the referendum process does not, in itself, violate the Due Process Clause of the Fourteenth Amendment when applied to a rezoning ordinance.
426 U.S. at 678-79, 96 S.Ct. at 2364-65. If the referendum result is itself unreasonable,
the zoning restriction is open to challenge in state court, where the scope of the state remedy available to the respondent would be determined as a matter of state law, as well as under Fourteenth Amendment standards.
426 U.S. at 677, 96 S.Ct. at 2364.
Following the principals enunciated in City of East Lake, we conclude that the reservation of zoning power by referendum does not violate federal due process. In Florida, as in Ohio, the referendum power has been reserved to the people. The Florida Constitution provides that "[a]ll political power is inherent in the people," and the enunciation therein "of certain rights shall not be construed to deny or impair others retained by the people."[5] Another section expressly states: "Special elections and referenda shall be held as provided by law."[6] There is no limitation in the Florida Constitution as to subject matter in the legislative realm which is inappropriate for referenda.
The Charter of the City of Winter Springs clearly provides for holding the referendum election in this case.[7] The record shows that in adopting the ordinance by which the zoning was changed on the subject property, the City complied with all procedural requirements of section 166.041(3)(c)(1), Florida Statutes (1979), pertaining to zoning and rezoning. Only after those statutorily required proceedings took place did the citizens of Winter Springs seek a referendum on the question of the Council's action in approving the rezoning request. The record also shows this procedure commenced in conformity with the City's Charter. At that point no further rezoning procedures were required. When the people of Winter Springs sought to review *88 the change by referendum, they removed the issue from the forum of the Council to the forum of the electorate. Such a referendum procedure does not grant the landowner any statutory or constitutional rights to notice and hearing.
The trial court was in error in holding the referendum procedure under the Charter of the City of Winter Springs was unconstitutional and invalid. The Summary Judgment in favor of appellee Florida Land Company is reversed.
REVERSED AND REMANDED.
DAUKSCH, C.J., and COBB, J., concur.
NOTES
[1] The court based the appellee's right to notice and opportunity to be heard on Article 1, Section 6 of the Florida Constitution, Chapter 163 of the Florida Statutes, and Chapter 44 of the Winter Springs Code.
[2] U.S.Const. amend. XIV.
[3] Town of Indialantic v. McNulty, 400 So.2d 1227 (Fla. 5th DCA 1981).
[4] The Ohio Constitution also provides: "The legislative power of the State shall be vested in a General Assembly ... but the people reserve to themselves the power to propose to the General Assembly laws and amendments to the constitution, and to adopt or reject the same at the polls on a referendum vote... ." Art. II, § 1, Ohio Const.
[5] Art. I, § 1, Fla. Const.
[6] Art. VI, § 5, Fla. Const.
[7] The State Legislature, which authored the charter of the City of Winter Springs in Special Acts, Chapter 72-718, specifically enumerated the powers of initiative and referendum:

The qualified voters of this city shall have the power to require reconsideration by the council of any adopted ordinance and, if the council fails to repeal an ordinance so reconsidered, to approve or reject it at a city election, provided that such challenge shall not extend to the budget or capital programs or any emergency ordinance or ordinance relating to appropriations of money or levy of taxes.
Article X, Section 10.01(b) Charter of the City of Winter Springs. The referendum, as provided for in the City's charter, cannot be called into operation until the City Council has promulgated an ordinance.