Joseph F. Hawkins, J.
Petitioner, by this article 78 proceeding, seeks to set aside the determination of the respondent Building Inspector denying its application for a building permit. Additionally, petitioner prays for a declaration .that the amendment to the Zoning Ordinance of the Town of Wappinger, enacted on March 9, 1970, changing the zoning classification of petitioner’s property, is unconstitutional as applied to the plaintiff; further, that Local Law No. 2 of 1967 of the Town of Wappinger (Local Laws, 1967, Vol. 2, p. 1998) is also unconstitutional.
The petitioner’s property which has been rezoned consists of three large tracts of land, known as the ‘ ‘ Riverdale ’ ’ apartment project. Application had been made to the Planning Board for approval which, on February 4, 1970, was granted to erect multiple-family residential dwellings on one of the three said sites. The owner plans to build 19 garden-type apartment buildings, containing a total of some 342 *829 dwelling units. Subsequently, but prior to issuing the building permit, the Town Board proposed, considered and then passed an amendment to the zoning ordinance which placed the subject and some adjacent properties in a one-family residential district, removing the prior classification which permitted erection of multiple-dwelling buildings.
Initially, it should be noted that Mr. Justice Mabbach, in his opinion dated April 23, 1970, partially set the procedural law of the case by holding that petitioner need not have sought relief from the Zoning Board and, hence, its article 78 proceeding was properly instituted.
The petitioner’s basic contentions of unoonstitutionality and invalidity are that the zoning amendments are not part of a comprehensive plan; that Local Law No. 2 of 1967 of the Town of Wappinger is a “forbidden interference” with plaintiff’s property rights; that possible conflicts are created by providing for standards for water supply which vary from those of the county’s Health Department. It further urges that, to require creating separate water corporations to ¡supply water, and to transfer title to the municipality under certain circumstances, coupled with requiring that security bonds be posted, further render the said local law unconstitutional since they impose unlawful restraints and limitations.
The respondents urge, inter alia, that no declaratory judgment lies, since the petitioner’s other action against some of the individual defendants accords petitioner adequate pecuniary relief; that its proof of “economic injury” is confined to only one parcel; that assuming such economic loss, the town, nevertheless, could properly enact legislation “ reducing the density of population in a large area ”; that there exists ¡such “comprehensive plan” justifying the changes of zoning; that “ the Town’s Master Plan was its Zoning Ordinance and Map ’ ’; and that appropriate density of population factors was considered by the municipality’s zoning consultants in their report of July, 1962 — the “Development Plan for the Town of Wappinger.”
Respondents’ primary emphasis, however, i-s that the petitioner’s proposed local water supply and sewage disposal facilities are inadequate for the anticipated population to be housed in the buildings.
Petitioner stresses three holdings in support of its contentions respecting unconstitutionality and invalidity. Udell v. Haas (21 N Y 2d 463) postulates that a zoning change not anchored to a comprehensive zoning plan may be proscribed as “ spot zoning.” At bar, the municipality does have a total *830 and complete zoning plan and map whether or not it is denominated as “ comprehensive:” A comprehensive zoning ordinance does not unalterably or irrevocably fix a particular classification; it may be changed, if not wrought discriminatorily or capriciously. The existence of a master plan is ¡some assurance against precipitate, discriminatory or ill-considered legislation; it does not, however, “freeze” each zoning designation.
Westwood Forest Estates v. Village of South Nyack (23 N Y 2d 424) initially appears to support the petitioner. There, however, “ the problem ” which the municipality sought to resolve “ was the hazard of increased pollution of the Hudson River, after inadequate treatment of the sewage effluent”, and which condition had long endured (p. 427). Thus the difficulty was beyond the owner’s power to remedy or to abate; rather, it was the municipality’s inadequate sewage disposal plant. The problem was “ general to the community and not caused by the nature of plaintiff’s land”. At bar, the contrary prevails.
Citing Matter of Fulling v. Palumbo (21 N Y 2d 30, 34), petitioner urges that the denial -of the building permit will cause it severe economic injury. Fulling, however, which involved minimum area standards, makes inapplicable such basic rule of financial hardship as the touchstone of invalidity. Where there is “ justification ”, i.e., a demonstration that the public health, safety and welfare will be served by upholding the zoning requirements, an owner’s damages are of no avail. The language of the Court of Appeals, under the facts at bar, is of particular significance: “ Nor does it appear that there would be any difficulty in supplying the water and sewage and other municipal facilities. Indeed, the record is completely barren of any justification for the denial of the variance other than the fact that the petitioners have failed to demonstrate sufficient hardship, and that the ordinance is not so severe in its operation as to be confiscatory. While these considerations are controlling, once it is demonstrated that the public health, safety and welfare will be served by application of the zoning restriction (Stevens v. Town of Huntington, 20 N Y 2d 352), until such a showing is made, the fact that the property owner will suffer a severe financial loss by the operation of the ordinance should be sufficient to entitle him to relief.”
Thus there was the recognition in Fulling that considerations of adequate water and sewage are vital aspects of public *831 health, and may take precedence over and outweigh the adverse pecuniary impact on the landowner.
Upon a thorough review of the trial minutes and briefs, as well as the authorities cited by the parties, it appears that courts must consider a new criterion in reviewing zoning legislation: the factor of ecology. Upon the trial, the court was favored with the testimony of two distinguished academicians on behalf of the respondents. Professor Jerome Regnier, Professor of Geology at Vassar College, testified at considerable length respecting the availability of the water resources on the property as well as those throughout the entire county. Drawing upon his exceptionally distinguished background and expertise and utilizing the geological data contained in the “Soil Survey of Dutchess County” prepared by the United States Department of Agriculture in co-operation with Cornell University Agricultural Experiment Station, this witness demonstrated that there, indeed, exists a grievous problem of adequate water supply and sewage disposal absent a central, i.e., public piped water system which is not dependent upon the vagaries of the wells dug or to be dug on the immediate property. Nor, as was testified, were the sewage treatment plans sufficiently adequate, and particularly so since the municipality had been plagued by such problems created by existing large multi-dwelling buildings whose water supply or sewage disposal facilities had failed.
Despite the repeated references by petitioner to the statements in Udell (21 N Y 2d 463, supra) that a zoning change cannot be sustained by post-adoption studies, the petitioner was well aware of the municipality’s concern with this problem; the preceding public hearing was largely concerned with these problems.
Professor Robert Rehwoldt of Marist College, Chairman of the Chemistry Department and also Director of its Environmental Science Program, has been conducting protracted research on pollution in Dutchess County. It was Dr. Rehwoldt’s considered opinion that erecting a substantial number of dwelling units without providing for adequate sewage disposal would be fraught with severely deleterious consequences to the ecology of the municipality and adjoining area.
Respecting ecology as a new factor, it appears that the time has come — if, indeed, it has not already irretrievably passed —• for the courts, as it were, to take 11 ecological notice ’ ’ in zoning matters.
*832 I hold that under Udell (supra) the municipality has here presented sufficient evidence to warrant the rezoning of the petitioner’s property, for it was prompted to do so by ecological considerations based not upon whim or fancy but upon scientific findings. The definition of “ public health, safety and welfare ” surely must now be broadened to include and to provide for these belatedly recognized threats and hazards to the public weal. The town’s decision to forego what, undoubtedly, would be substantial additional tax revenue, would appear to constitute a recognition that it as well as an owner must subordinate immediate to long-term interests.
The court is not unmindful that zoning changes prompted by such environmental considerations may appreciably limit the uses and profitability of land; yet if both factors were to be placed upon the scales, the pro bono publico considerations must prevail. If there is substantial evidence sustaining the municipality’s determination to rezone because of ecology, the court should not void such legislative determination.
I hold that the zoning change enacted by the respondent municipality is, under the circumstances, a valid exercise of its legislative power.
Having made such determination, there is no need to consider the constitutionality, partially or wholly, of Local Law No. 2- of 1967 of the Town of Wappinger. It contains a comprehensive, legislative plan intended to assure residents of large, multiple dwelling projects an adequate supply of water. Under the above circumstances, to do so would be to rule upon a hypothetical situation, for, having determined that the petitioner is not entitled to a building permit to erect such multiple dwelling units, it is academic to review judicially such legislation which by its terms is applicable only to multi-residence structures.
The petition is denied.