HAVERFIELD, Judge.
Appellant seeks review of an order denying its petition for writ of certiorari, and upholding the validity of Dade County resolution Z-115-75 rezoning petitioner’s property from IU-2 to GU.
Over ten years ago Moviematic Industries Corporation purchased 1,200 acres of undeveloped real property located in a remote area of unincorporated west Dade County zoned for heavy industrial use (IU-2) with a special exception for business airport uses. The property overlies the Biscayne Aquifer which serves as a major source of the drinking water in the county. On March 19,1974 the county commission imposed a building moratorium[1] on an area consisting of approximately 323 square miles of west Dade County, including petitioner’s property, for the express purpose of conducting and preparing a comprehensive study directed to the protection of the fresh water supply and the natural ecosystems which function in this part of the county. Following the study, on April 23,1975 the county building and zoning department and the planning department jointly recommended to the commission that (1) petitioner’s property be rezoned from IU-2 to GU (interim classification which permits single family residential use on minimum five acre lots), and (2) the previously approved special permit for business airport uses be terminated. At a public hearing on this matter, the commission heard expert testimony in support of the recommended GU zoning classification and petitioner’s evidence in opposition thereto. At the conclusion of the hearing, the commissioners adopted resolution Z-115-75 which rezoned the subject property from IU-2 to GU and terminated the special permit for business airport uses. Peti *669 tioner by way of certiorari sought review of the zoning resolution in the circuit court and after a hearing, the court entered its order of denial.
Appellant basically argues that zoning resolution Z-115-75 is invalid because it bears no reasonable relationship to the public health, safety, morals and welfare-and constitutes such an unreasonable restriction on petitioner’s right to the beneficial use of its property that the resolution amounts to a taking of real property without compensation in violation of the United States and Florida Constitutions. We cannot agree.
A threshold question to a consideration of this appeal is whether preservation of an adequate drinking water supply and ecological system in a particular area are legitimate objectives of zoning resolutions and ordinances.
Zoning regulations which are reasonably related to the adequacy of governmental services fall within the established purpose of the public health, safety and welfare; water supply relates clearly to the public health. Therefore, zoning ordinances have been sustained because of their tendency to insure that such essential governmental services as water supply will be provided. See Anderson, R.M., American Law of Zoning § 7.26 (2d ed 1968). It is clear that the county commission is empowered under Article 1, Section 1.01(A)(9) and (12) of the Home Rule Charter of Metropolitan Dade County to enact zoning ordinances and resolutions to assure an adequate water supply for the protection of the public. See also Section 2-116.3 et seq. Code of Metropolitan Dade County, Section 23A-1, Code of Metropolitan Dade County.
With respect to the objective of preserving the ecological systems, zoning regulations which tend to preserve the residential or historical character of a neighborhood and/to enhance the aesthetic appeal of a community are considered valid exercises of the public power as relating to the general welfare of the community. See City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364 (1941); Merritt v. Peters, 65 So.2d 861 (Fla.1953); Sunad, Inc. v. City of Sarasota, 122 So.2d 611 (Fla. 1960); William Murray, Inc. v. Jacksonville, 254 So.2d 364 (Fla. 1st DCA 1971); City of Boca Raton v. Tradewind Hills, Inc., 216 So.2d 460 (Fla. 4th DCA 1968); County of Brevard v. Woodham, 223 So.2d 344 (Fla. 4th DCA 1969); Watson v. Mayflower Property, Inc., 223 So.2d 368 (Fla 4th DCA 1969); City of Coral Gables v. Wood, 305 So.2d 261 (Fla. 3d DCA 1974) and E. B. Elliot Advertising Co. v. Metropolitan Dade County, 425 F.2d 1141 (5th Cir. 1970); Stone v. City of Maitland, 446 F.2d 83 (5th Cir. 1971); Maher v. City of New Orleans, 516 F.2d 1051 (5th Cir. 1975). The above being legitimate concerns within the category of the general welfare, then certainly the irreversible effect on the area’s ecological balance as the result of urban development can be and should be considered and reflected in zoning codes. We find the iii-clusion of ecological considerations as a legitimate objective of zoning ordinances and resolutions is long overdue and hold that preservation of the ecological balance of a particular area is a valid exercise of the police power as it relates to the general welfare. We are not alone in this determination as courts in other jurisdictions have recognized the importance of considering the ecological objectives in zoning matters. See Nattin Realty, Inc. v. Ludewig, 67 Misc.2d 828, 324 N.Y.S.2d 668 (Sup.Ct.1971) and Steel Hill Development, Inc. v. Town of Sanbornton, 469 F.2d 956 (1st Cir. 1972). In Nattin Realty, Inc., supra, 67 Misc.2d 828, 324 N.Y.S.2d at 672, the court summarized this issue most appropriately as follows:
“Respecting ecology as a new factor, it appears that the time has come — if, indeed, it has not already irretrievably passed — for the courts, as it were, to take ‘ecological notice’ in zoning matters.
“[5] . . . the municipality has here presented sufficient evidence to warrant the rezoning of the petitioner’s property, for it was prompted to do so by ecological considerations based not upon whim or fancy but upon scientific findings. The' definition of ‘public health, safety and welfare’ surely must now be *670 broadened to include and to provide for these belatedly recognized threats and hazards to the public weal. The Town’s decision to forego what, undoubtedly, would be substantial additional tax revenue would appear to constitute a recognition that it as well as an owner must subordinate immediate to long-term interests.
“The Court is not unmindful that zoning changes prompted by such environmental considerations may appreciably limit the uses and profitability of land; yet if both factors were to be placed upon the scales, the pro bono publico considerations must prevail. If there is substantial evidence sustaining the municipality’s determination to rezone because of ecology, the court should not void such legislative determination.”
In view of our determination that ecological considerations are legitimate objectives of a zoning ordinance or resolution, the following summation of evidence presented to the commission substantiates the county’s position that resolution Z-115-75 is reasonably related to the public health and welfare and will confer a public benefit upon the citizens of the county:
“The subject property area overlies one of the most permeable aquifers in the world, the Biscayne Aquifer. This aquifer serves as the source of virtually all drinking water in Dade County and must be protected from contamination. Due to the unique area hydrology and geology, the Biscayne Aquifer, the inland drainage canals, and the conservation area in West Dade County are all directly interconnected. As a result of this interconnection, the bodies must be considered as component parts of the same water supply system.
“The composition of the Biscayne Aquifer is mostly limestone and sand. The generally high porosity of the sand and the many passages through the limestone offer very little resistance to flow. The result is that the aquifer responds quickly co slight differences in the water table, with the following consequences:
“1. The water table is relatively flat.
“2. The yields of wells are large.
“3. The ground and surface water regimens have an uncommonly high interrelationship.
“4. The water table reacts quickly to rainfall. There is a high rate of rainfall penetration and surface water infiltration and, although annual rainfall is high, there is relatively little runoff as compared with other localities.
“5. The coastal areas, which are exposed to Biscayne Bay and the Atlantic Ocean, are highly susceptible to saltwater intrusion.
“The property in question contains a blue-green algae mat or periphyton which filters .out many pollutants from the ground water. The process, which is referred to as ‘biological assimilation’, is important in protecting the ground and surface water quality.
“Before it may be developed or improved, the subject property must be filled by a minimum of three' feet of earth or other suitable fill material to comply with federal flood control criteria. Thus, the natural state of the property would have to be substantially altered before any meaningful development thereon could occur.
“Any excavation of the Petitioner’s property would remove the natural peri-phyton ‘filtering mat’ and would expose the aquifer, from which the drinking water supplies of Dade County are drawn, to a whole range of pollutants. The algae mat involves biological, chemical and physical processes which maintain the area’s water quality.
“Rainfall, which varies between 40 and 85 inches per year and averages about 59 inches per year, provides the major water resource of Dade County. Approximately 80% of the annual rainfall occurs during the six-month ‘rainy season’ from May through October. The sensitivity of the area is unchallenged.”
Finally, we now confront the difficult issue presented, whether the application of the GU classification so substantially *671 impairs petitioner’s use of his property that it cannot be put to any reasonable use and, therefore, amounts to a constructive taking without compensation. In determining the above issue, we are guided by the following controlling principles of law: A zoning ordinance is confiscatory if it deprives an owner of the beneficial use of his property by precluding all uses to which the property might be put or the only use to which it is reasonably adaptable. Forde v. City of Miami Beach, 146 Fla. 676, 1 So.2d 642 (1941); County of Brevard v. Woodham, 223 So.2d 344 (Fla. 4th DCA 1969), supra. Nevertheless, it is not necessary to the constitutional validity of an ordinance that it permit the highest and best use of a particular piece of property. City of Miami v. Zorovich, 195 So.2d 31 (Fla. 3d DCA 1967), cert. den., 201 So.2d 554 (Fla.1967) for as this court reasoned in City of Miami v. Zorovich, supra, at 36:
“A zoning ordinance is not invalid merely because it prevents the owner from using the property in the manner which is economically most advantageous. If the rule were otherwise, no zoning could ever stand.”
Our Supreme Court in City of St. Petersburg v. Aikin, 217 So.2d 315, 317 (Fla.1968) further expounded:
“The determination that ‘plaintiff’ desired use of the land would not be an unreasonable ‘use’ is in our opinion irrelevant, as is the reference to the question of whether ‘the use sought is consistent and compatible with the health, safety, morals and welfare of the general public.’ The recited evidence, confirmed by our study of the record, clearly shows that the plaintiffs in this case failed in proof of the primary point in issue, i. e. that the existing ordinance was confiscatory in effect.”
Finally, government through the exercise of its police power may impose reasonable restrictions upon the use of property in the interests of the public health, morals, safety and public welfare. City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364 (1941); Sarasota County v. Barg, 302 So.2d 737 (Fla.1974).
After having examined the record with these principles of law in mind, we cannot say that at the present time the challenged resolution has so restricted petitioner’s use of his property as to render it valueless. First, under the GU classification [2] petitioner may develop its property in accordance with the uses permitted in an EU-2 district (single family residential on five acre minimum lots). See Sections 33-196 and 33-234, Code of Metropolitan Dade County. The EU-2 classification also permits all uses in the EU-1 classification, and several other possible alternative uses of the property were suggested by the planning department in its recommendation to the county commission in support of the GU zoning classification. In contrast, petitioner has failed to present sufficient evidence demonstrating that the subject property’ cannot be put to any reasonable use compatible with the GU classification. The property has been zoned IU-2 since 1958, and petitioner itself has owned the property for over the past ten years; nevertheless, petitioner has failed to take any concrete steps toward the development thereof for industrial purposes, nor has it ever filed an application with the county with respect thereto. Petitioner merely offered evidence as to the current $175,000 mortgage on the property and some vague plans for eventual development of an industrial park at some indefinite future time. At most, petitioner has only succeeded in showing that the change from industrial to low density residential has resulted in a reduction of the property’s market value which we conclude is not sufficient to constitute a taking. See HFH, Ltd. v. Superior Court of Los Angeles County, 15 Cal.3d 508, 125 Cal.Rptr. 365, 542 P.2d 237 (1975) and Maher v. City of New Orleans, 516 F.2d 1051 (5th Cir. 1975), supra. See also City of Eastlake v. Forest City Enterprises, Inc., 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132, 138 footnote 8 (1976).
*672 We conclude that the restrictions imposed by resolution Z-115-75 are reasonable in light of the legislative intent to preserve as nearly as possible an adequate water supply and the ecological balance in the area. However, that is not to say petitioner would be precluded from compensation under the Constitution if at some future date, upon taking positive steps to develop its property, petitioner proves it has been so restricted in its development efforts by the County that it is being deprived of the beneficial use of the property for the purpose of conferring a public benefit.
Affirmed.

. Commonly referred to as the East Everglades Moratorium.

. No trend of development having been established in the vicinity of petitioner’s property.