400 So.2d 1227 (1981)
TOWN OF INDIALANTIC et al., Appellants,
v.
Clifford A. McNULTY, Appellee.
No. 79-1765/T4-714.
District Court of Appeal of Florida, Fifth District.
April 29, 1981.
Rehearing Denied May 21, 1981.
*1229 William C. Potter of Nabors, Potter, McClelland, Griffith & Jones, P.A., Melbourne, for appellants.
Joseph S. Gillin, Jr., of Storms, Krasny, Normile, Dettmer & Gillin, P.A., Melbourne, for appellee.
SHARP, Judge.
The Town of Indialantic in Brevard County and individual members of the Town Council appeal[1] from a judgment of the circuit court holding that the town's zoning ordinance, section 28-96(15), is invalid and unconstitutional as applied to the appellee's (McNulty's) ocean-front lots, and "land similarly situated." The ordinance provides:
All buildings must be set back not less than 25 feet from the bluff line or not less than 50 feet from the mean high water line along the Atlantic Ocean, whichever is greater.
We reverse because the circuit court erroneously placed on the appellants the burden of showing why McNulty should not be relieved from the zoning restriction, and because McNulty failed to present sufficient evidence to show the ordinance was unconstitutional on its face, or as applied to his property.
McNulty acquired his four ocean-front lots in 1963. In 1978 McNulty sought a building permit to build a residence on two of his four lots. The lots run 122 feet west from the high water line of the ocean to Wavecrest Avenue. The bluff line or dune line crosses McNulty's lots running north and south, approximately 20 feet seaward of Wavecrest Avenue. Under the town's residential zoning ordinances, McNulty's proposed residence had to be set back 25 feet from the street, and 25 feet landward from the bluff-line, leaving McNulty with no possible way to construct anything on his lots and comply with the zoning ordinances.
Because of his inability to comply with the zoning ordinances, McNulty applied to the Town's Board of Adjustment to obtain a variance. Section 28-102 of the Town's zoning code provides that variances may be granted "in the case of exceptionally irregular narrow or shallow lots or unusual topographical conditions, whereby such application would result in unusual difficulties or unnecessary hardship not caused by the applicant himself that would deprive the owner of the reasonable use of the land or building involved."[2] The Board could grant a variance if it determined the use would "not seriously impair the use of adjacent property in the same district"[3] and that the variance was "made necessary by the unique character of the property and is not caused in any way by the owner."[4] The property owner seeking the variance was also required to show "the variance requested is the minimum variance that will accomplish the purpose intended."[5] The Board denied McNulty's request for a variance but no record was made of those proceedings. He then appealed to the highest zoning authority, the Town Council.
The Town Council held a de novo hearing. McNulty was the sole witness. He presented to the Town Council (apparently) the same arguments and reasons why he should be given a variance which he had presented to the Board. The only documentary evidence consisted of a drawing of his proposed residence, sketched on an old survey of the property.
McNulty's drawing was a rough sketch showing only the outlines of the proposed structure. It showed that the whole structure, including the garage, would be built *1230 seaward of the bluff line, and that the major living areas would be seaward of the toe or bottom of the slope. McNulty took the position before the Council that he did not have to submit any engineering or architectural data or drawings concerning how the residence would be built, the topography of the beach in that area and the history of storms, the pattern of erosion of that beach area, or how or whether the building would affect the bluffs or any natural vegetation. He stated that he relied solely on his assurances the house would be put "on pilings" and that he would not damage or injure the dunes.
Members of the Town Council expressed concern that the drawing did not show where the pilings would go, whether they would be "seaworthy" to stand against a storm tide, and how plumbing and utilities to service the residence would be handled. One member said:
This is the first time we've been asked for variance on this. I, myself, am not satisfied that I have enough information to make a decision on. I have no, no design, no site plan, no nothing. I don't know where your pilings are going to go. I don't have the vaguest idea. I can't make a decision.
The Town Council unanimously upheld the Board's denial of the variance, and McNulty obtained a writ of certiorari from the circuit court which is the subject of this appeal.

I. IS THE ORDINANCE INVALID ON ITS FACE?
Because the circuit court struck down the ordinance as being unconstitutional and unenforceable not only as to McNulty's property, but also as to "land similarly situated," we initially must consider whether on its face, the ordinance is invalid. When a zoning ordinance is challenged on this basis, courts presume, unless shown otherwise, that the ordinance is valid,[6] and if it is reasonably related to public welfare, health and safety,[7] in a manner characterized by the appellate courts as "fairly debatable," it will be upheld.[8] Further, the burden of showing that the zoning ordinance is invalid is on the challenger  not the zoning authority.[9] The rationale for these rules and limitations on judicial review of zoning decisions stems from the doctrine of "separation of powers."[10] The courts should not become "super" zoning review boards. Zoning decisions are primarily "legislative" in nature and such decisions should be made by zoning authorities responsible to their constituents.[11]
McNulty failed to present any serious challenge to the constitutionality of the ordinance on its face. The ordinance appears not discriminatory, since it applies to all properties fronting the ocean in the Town of Indialantic, and it can hardly be questioned that its purpose is reasonably related to a valid exercise of the "police power." *1231 Members of the Town Council expressed their concern for "problems" they were experiencing with their coast, and the great harm that could result to the Town if building was freely permitted on or seaward of the dune line. Even McNulty acknowledged that the preservation of the dunes was a valid concern of the Town.
Through sad experience Florida has learned the importance of the barrier sand dunes which face its "high energy" beaches.[12]
Sand beaches and dunes comprise a very small and unstable part of Florida's coastal zone. Forming a narrow band along the shores of the Atlantic Ocean and the Gulf of Mexico, they offer some of the state's most attractive and most hazardous locations for real estate development. Without adequate controls on construction and excavation, oceanfront development could destroy not only manmade structures but also beaches and dunes.
Maloney and O'Donnell, Drawing the Line at the Oceanfront, 30 Fla.L.Rev. 383, 389 (1978). Various local communities, like Indialantic, have adopted similar set back ordinances to protect the dunes, bluffs and natural vegetation of their beaches, and Chapter 161, Florida Statutes (1979), the "Beach and Shore Preservation Act," has as one of its stated purposes the protection and preservation of the "beach dune system."[13] Section 161.053(1) provides:
The Legislature finds and declares that the beaches of the state, by their nature, are subject to frequent and severe fluctuations and represent one of Florida's most valuable natural resources and that it is in the public interest to preserve and protect them from imprudent construction which can jeopardize the stability of the beach-dune system, accelerate erosion, provide inadequate protection to upland structures, and endanger adjacent property and the beach-dune system. In furtherance of these findings, it is the intent of the Legislature to provide that the department, acting through the division, shall establish coastal construction control lines on a county basis along the sand beaches of the state fronting on the Atlantic Ocean and the Gulf of Mexico. Such lines shall be established so as to define that portion of the beach-dune system which is subject to severe fluctuations based on a 100-year storm surge or other predictable weather conditions, and so as to define the area within which special structural design consideration is required to insure protection of the beach-dune system, any proposed structure, and adjacent properties, rather than to define a seaward limit for upland structures.
The "construction line" drawn pursuant to this State law was west or landward of the setback line of the Town as applied to McNulty's land. In any event, the State law contemplated that cities and counties could establish stricter setback lines than those set by the State.[14]
There can no longer be any question that the "police power" may be exercised to protect and preserve the environment.[15] Florida's Constitution expressly provides:

*1232 It shall be the policy of the State to conserve and protect its natural resources and scenic beauty. Adequate provisions shall be made by law for the abatement of air and water pollution and of excessive and unnecessary noise.
Art. II, § 7, Fla. Const. Other jurisdictions have reached a similar conclusion, without the benefit of an express constitutional provision.[16] The wetlands and coastal areas are places of critical concern because of their important role in protecting the inland regions against flooding and storm danger.[17] The ordinance in this case passes constitutional muster because it was not shown to be in any way arbitrary or discriminatory, or more severe or strict than necessary to achieve a valid police power purpose.[18]

II. IS THE ORDINANCE INVALID AS APPLIED TO McNULTY'S PROPERTY?
In Florida, it is well established that an ordinance may be declared invalid as to particular property because the ordinance affects or limits the reasonable use of the land so drastically as to result in a situation tantamount to "inverse condemnation."[19] This "rule" was first stated in Forde v. City of Miami Beach, 146 Fla. 676, 1 So.2d 642, 645 (1941):
On the other hand, if the application of the zoning ordinance has the effect of completely depriving the owner of the beneficial use of his property by precluding all uses or the only use, to which it is reasonably adapted, an attack upon the validity of the regulation as applied to the particular property, will be sustained... . And such an ordinance as the one here under consideration must not infringe the constitutional guaranties of the national or state constitutions by invading personal or property rights unnecessarily or unreasonably. (Citation omitted).
The limitation on use of an owner's property must constitute more than the prohibition of "the highest and best" use;[20] and the burden of proving the effect of the ordinance on the land, and its reasonable use, is on the challenger of the ordinance.[21] This is often stated in the form of a "presumption" or limitation of scope of judicial review: so long as there is some reason for the zoning body's action so as to make it "fairly debatable," the zoning decision should stand.[22] If the challenger of the *1233 ordinance fails to make a prima facie showing, the zoning body or municipality need not prove the constitutionality of the ordinance. Lambros, Inc. v. Town of Ocean Ridge, 392 So.2d 993 (Fla. 4th DCA 1981).[23]
In this case McNulty established only that he was forbidden by the ordinance from building on his oceanfront land. That is not sufficient to make a prima facie showing. Lambros, Inc. Like the state statute,[24] the Town's ordinance could be waived or varied to permit construction of a building through application for a variance.[25] Granting of the variance, like the state permit, necessarily involves consideration of a complex set of facts relating to the particular property[26] such as the type and method of construction, topography of the beach, storm and erosion histories, and methods of handling utility and sewer services to the structure.[27] McNulty's handdrawn sketch on an old survey and his assurances he would build the house on pilings was insufficient, and for that reason alone, the denial of his application for a variance should be sustained.[28]
We recognize that in a close case it is difficult to determine when a regulation or limitation becomes a "taking" and therefore unconstitutional as applied to a particular property.[29] A certain amount of balancing or weighing of the harm intended to be prevented for the public good against the property owner's rights is involved.[30] In this case, the harm intended to be prevented is substantial.[31] In such a case, the property owner has a heavier burden to show his intended use of his property will not likely cause the dangers or harm intended to be prevented by the ordinance, to occur.[32]
Further, because the constitutional issue involved in these cases is whether or not the property owner is being substantially deprived of the use of his property, he should also show that it would be reasonably possible for him to use his property in the manner he intended. A "taking" cannot be said to have occurred if it was not feasible to build a residence in the place forbidden by the ordinance. Smith v. City of Clearwater, 383 So.2d 681 (Fla. 2d DCA 1980).[33] McNulty failed to make any such *1234 showing, although he may be able to do so in the future.
Accordingly, the lower court's judgment is reversed.
REVERSED.
COBB, J., concurs.
ORFINGER, J., concurs specially with opinion.
ORFINGER, Judge, concurring:
I concur in the excellent opinion written by Judge Sharp. Additionally, it is worth noting that while, as appellee suggests, it might not be practical to go to the expense of complete and detailed engineering drawings when it is not certain that either the Board of Adjustment or the Town Council will consider granting a variance (a point we need not and do not decide here), it appears clear that these authorities have a right to require the presentation of sufficient documentation or other evidence as will initially satisfy them that the applicant has a viable plan. The effect on the community of a request to invade the dune line is sufficiently serious to require more than a "back of the envelope" type of presentation.
NOTES
[1] Although we previously ordered that appellants' Notice of Appeal was to be considered as a Petition for Writ of Certiorari, in retrospect we believe this case was a proper appeal before this court, and we treat it accordingly. Because a sufficient record and briefs were included in the file, this procedural error does not adversely affect the substantial rights of the parties. See Fla.R.App.P. 9.040(d).
[2] Indialantic, Fla., Code § 28-102(1) (1962).
[3] Indialantic, Fla., Code § 28-102(2)(b) (1962).
[4] Indialantic, Fla., Code § 28-102(2)(c) (1962).
[5] Indialantic, Fla., Code § 28-102(4)(c) (1962).
[6] City of Miami v. Romer, 58 So.2d 849 (Fla. 1952); City of Miami v. Rosen, 151 Fla. 677, 10 So.2d 307 (1942).
[7] Forde v. City of Miami Beach, 146 Fla. 676, 1 So.2d 642 (1941).
[8] City of Miami Beach v. First Trust Co., 45 So.2d 681 (Fla. 1949); Broward County v. Capeletti Bros., Inc., 375 So.2d 313 (Fla. 4th DCA 1979), cert. denied, 385 So.2d 755 (Fla. 1980); Davis v. Sails, 318 So.2d 214 (Fla. 1st DCA 1975); Turnpike Realty Co., Inc. v. Town of Dedham, 362 Mass. 221, 284 N.E.2d 891 (1972), cert. denied, 409 U.S. 1108, 93 S.Ct. 908, 34 L.Ed.2d 689 (1973); 12 Fla.Jur.2d Counties § 181 (1979).
[9] City of Miami v. Romer, 58 So.2d 849 (Fla. 1952); Broward County v. Capeletti Bros., Inc., 375 So.2d 313 (Fla. 4th DCA 1979), cert. denied, 385 So.2d 755 (Fla. 1980); Rural New Town, Inc. v. Palm Beach County, 315 So.2d 478 (Fla. 4th DCA 1975). 5 E. Yokley, Zoning Law and Practice, § 28-8 (4th ed. 1980). But see Zabel v. Pinellas County Water and Navigation Control Auth., 171 So.2d 376 (Fla. 1965); Lawley v. Town of Golfview, 174 So.2d 767 (Fla. 2d DCA 1965), disapproved in, City of St. Petersburg v. Aikin, 217 So.2d 315 (Fla. 1968).
[10] See Askew v. Cross Key Waterways, 372 So.2d 913 (Fla. 1978).
[11] Broward County v. Capeletti Bros., Inc., 375 So.2d 313 (Fla. 4th DCA 1979), cert. denied, 385 So.2d 755 (Fla. 1980); Mayor and Alderman v. Annapolis Waterfront Co., 284 Md. 383, 396 A.2d 1080 (1979).
[12] "The `high energy beach' is a shore fronting the open ocean and dominated by sand and dunal features." Maloney and O'Donnell, Drawing the Line at the Oceanfront, 30 Fla.L. Rev. 383, 385 n. 19 (1978).
[13] Section 161.141, Florida Statutes (1979) also makes a finding:

Beach erosion being a serious menace to the economy and general welfare of the people of this state and having advanced to emergency proportions, it is hereby declared to be in the public interest that the Legislature make provision for publicly financed beach nourishment and restoration and erosion control projects... .
[14] §§ 161.052(2)(b), 161.053(4), Fla. Stat. (1979). See § 163.3177(6)(d), (f) and (g), Fla. Stat. (1979).
[15] City of Miami Beach v. First Trust Co., 45 So.2d 681 (Fla. 1949); S.A. Healy Co. v. Town of Highland Beach, 355 So.2d 813 (Fla. 4th DCA 1978); Albrecht v. Department of Environmental Regulation, 353 So.2d 883 (Fla. 1st DCA 1977), cert. denied, 359 So.2d 1210 (Fla. 1978); Moviematic Indus. Corp. v. Board of County Comm'rs., 349 So.2d 667 (Fla. 3d DCA 1977); 5 E. Yokley, Zoning Law and Practice § 39-2 (4th ed. 1980).
[16] See Zabel v. Tabb, 430 F.2d 199 (5th Cir.1970); Adams v. North Carolina Department of Natural and Economic Resources, 295 N.C. 686, 249 S.E.2d 402 (1978); Sibson v. State, 115 N.H. 124, 336 A.2d 239 (1975); Spiegle v. Borough of Beach Haven, 116 N.J. Super. 148, 281 A.2d 377 (1971); Spiegle v. Borough of Beach Haven, 46 N.J. 479, 218 A.2d 129 (1966); Just v. Marinette County, 56 Wis.2d 7, 201 N.W.2d 761 (1972).
[17] See State and Local Wetlands Regulation: The Problem of Taking Without Just Compensation, 58 U.Va.L.Rev. 876 (1972).
[18] Lambros, Inc. v. Town of Ocean Ridge, 392 So.2d 993 (Fla. 4th DCA 1981); City of Miami v. Zorovich, 195 So.2d 31 (Fla. 3d DCA), cert. denied, 201 So.2d 554 (Fla. 1967); 23 Fla.Jur. Municipal Corp. § 136 (1959).
[19] City of Miami v. Romer, 58 So.2d 849 (Fla. 1952); City of Miami v. Rosen, 151 Fla. 677, 10 So.2d 307 (1942); Mailman Development Corp. v. City of Hollywood, 286 So.2d 614 (Fla. 4th DCA 1973).
[20] Moviematic Indus. Corp. v. Board of County Comm'rs., 349 So.2d 667 (Fla. 3d DCA 1977).
[21] City of St. Petersburg v. Aikin, 217 So.2d 315 (Fla. 1968); Burritt v. Harris, 172 So.2d 820 (Fla. 1965); City of Miami v. Romer, 58 So.2d 849 (Fla. 1952); City of Miami v. Rosen, 151 Fla. 677, 10 So.2d 307 (1942); Forde v. City of Miami Beach, 146 Fla. 676, 1 So.2d 642 (1941); Broward County v. Capeletti Bros., Inc., 375 So.2d 313 (Fla. 4th DCA 1979), cert. denied, 385 So.2d 755 (Fla. 1980); Moviematic Indus. Corp. v. Board of County Comm'rs., 349 So.2d 667 (Fla. 3d DCA 1977); Rural New Town, Inc. v. Palm Beach County, 315 So.2d 478 (Fla. 4th DCA 1975); William Murray Builders, Inc. v. City of Jacksonville, 254 So.2d 364 (Fla. 1st DCA 1971); Union Trust Co. v. Lucas, 125 So.2d 582 (Fla. 2d DCA 1960).
[22] Skaggs-Albertson's v. ABC Liquors, Inc., 363 So.2d 1082 (Fla. 1978); City of St. Petersburg v. Aikin, 217 So.2d 315 (Fla. 1968); City of Miami Beach v. Lachman, 71 So.2d 148 (Fla. 1953); Hoffman v. Brevard County Bd. of Comm'rs., 390 So.2d 445 (Fla. 5th DCA 1980); Smith v. City of Clearwater, 383 So.2d 681 (Fla. 2d DCA 1980); Dade County v. Beauchamp, 348 So.2d 53 (Fla. 3d DCA 1977), cert. denied, 355 So.2d 512 (Fla. 1978); Rural New Town, Inc. v. Palm Beach County, 315 So.2d 478 (Fla. 4th DCA 1975).
[23] Compare Rural New Town, Inc. v. Palm Beach County, 315 So.2d 478 (Fla. 4th DCA 1975).
[24] The state statute requires a land owner to apply for a permit to construct beyond the "dune line". § 161.052(2), Fla. Stat. (1979).
[25] Indialantic, Fla., Code § 28-102 (1962).
[26] City of Miami v. Rosen, 151 Fla. 677, 10 So.2d 307 (1942); Duval Productions, Inc. v. City of Tampa, 307 So.2d 493 (Fla. 2d DCA), cert. denied, 317 So.2d 78 (Fla. 1975).
[27] See City of Miami Beach v. Lachman, 71 So.2d 148 (Fla. 1953); § 161.052(2), Fla. Stat. (1979); Fla. Admin. Code Rule 16B-25.05  .09; Maloney and O'Donnell, Drawing the Line at the Oceanfront, 30 Fla.L.Rev. 383, 388, 392 (1978).
[28] DeCarlo v. Town of West Miami, 49 So.2d 596 (Fla. 1950); Union Trust v. Lucas, 125 So.2d 582 (Fla. 2d DCA 1960); Adams v. North Carolina Dept. of Natural and Economic Resources, 295 N.C. 686, 249 S.E.2d 402 (1978).
[29] Turnpike Realty Co., Inc. v. Town of Dedham, 362 Mass. 221, 284 N.E.2d 891 (1972); Sibson v. State, 115 N.H. 124, 336 A.2d 239 (1975); Spiegle v. Borough of Beach Haven, 46 N.J. 479, 218 A.2d 129 (1966). State and Local Wetlands Regulation: The Problem of Taking Without Just Compensation, 58 U.Va.L.Rev. 876 (1972).
[30] See Town of Bay Harbor Islands v. Schlapik, 57 So.2d 855 (Fla. 1952); City of Miami v. Rosen, 151 Fla. 677, 10 So.2d 307 (1942).
[31] Section 161.052(7), Fla. Stat. (1979), declares new construction beyond the dune line without a permit to be a "public nuisance" and summarily removable without compensation.
[32] See Sturdy Homes, Inc. v. Township of Redford, 30 Mich. App. 53, 186 N.W.2d 43 (1971).
[33] Maloney and O'Donnell, Drawing the Line at the Oceanfront, 30 Fla.L.Rev. 383, 401, 402 (1978). See Broward County v. Capeletti Bros., Inc., 375 So.2d 313 (Fla. 4th DCA 1979), cert. denied, 385 So.2d 755 (Fla. 1980); Spiegle v. Borough of Beach Haven, 116 N.J. Super. 148, 281 A.2d 377 (1971); Spiegle v. Borough of Beach Haven, 46 N.J. 479, 218 A.2d 129 (1966); Just v. Marinette County, 56 Wis.2d 7, 201 N.W. 761 (1972).